**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| URSULA CARR,<br><br>          Plaintiff,<br><br>      v.<br><br>COUNTY OF CAMDEN; OFFICER SAMSON #1000; SERGEANT MIGDALIA SANCHEZ, *et al.*,<br><br>         Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 22-3698 (KMW-SAK)<br><br>**OPINION** |

APPEARANCES:

PETER KOBER, ESQ.
KOBER LAW FIRM, LLC
1864 ROUTE 70 EAST
CHERRY HILL, NJ 08003

    *Counsel for Plaintiff Ursula Carr*

J. BROOKS DIDONATO, ESQ.
ASHLEY A. VARGHESE, ESQ.
PARKER MCCAY, P.A.,
9000 MIDLANTIC DRIVE, SUITE 300
MOUNT LAUREN, NJ 08054

    *Counsel for Defendants Camden County, Officer Samson, Sergeant Migdalia Sanchez*

**WILLIAMS, District Judge:**

## I.     INTRODUCTION

Plaintiff Ursula Carr ("Plaintiff") brings this action against Defendant Justin Samson ("Defendant Officer Samson"); Defendant Sergeant Migdalia Sanchez ("Defendant Officer Sanchez"); and Defendant Camden County (collectively, "Defendant Officers"), alleging that each Defendant contributed to the violation of: Plaintiff's constitutional rights, 42 U.S.C. § 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, ("NJCRA"), the common law, and the New Jersey Tort Claims Act ("NJTCA"), when she was arrested on the corner of Henry Street and Royden Street in Camden, New Jersey for improper behavior and brought to the nearest station after a warrant check came back with two active warrants under her name. Ultimately, the warrants were for a different Ursula Carr, and thus Plaintiff initiated this suit.

This matter comes before the Court on Defendants' Motion for Summary Judgment. (ECF No. 23). Plaintiff opposes the motion, (ECF No. 26), and Defendants replied. (ECF No. 29). For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED.**[1]

## II.     BACKGROUND

On July 24, 2021, police were responding to a fight on the corner of Henry and Royden Streets in Camden, New Jersey at 8:13 PM, with Defendant Officer Sanchez arriving at the scene at approximately 8:49 PM and Defendant Officer Samson arriving at approximately 9:03 PM. Defendants' Statement of Uncontested Material Facts ("SMF") ¶¶1-4. Three people, including Plaintiff, out of the restive crowd were issued hand summonses for improper behavior because

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

they refused to obey the officers' instructions.  SMF ¶¶5-7.[2]  Police at the scene began to process routine warrant checks on the three individuals and issued them hand summonses when Central Communications notified Defendant Officer Samson that Plaintiff's details yielded two active warrants.  SMF ¶¶8-11.  Plaintiff informed the officers that she did not have any outstanding warrants.  SMF ¶¶ 12.  Defendant Officer Sanchez insisted that even if the warrants were a mistake, that Plaintiff was required to go to Central Booking for processing.  SMF ¶¶18-19.  After getting to the station, it was determined that the warrants were issued against an Ursula Carr with a different date of birth, and thus Plaintiff was immediately released from custody.  SMF ¶¶20-21.

## III.   LEGAL STANDARD

**Motion for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[2] Plaintiff disputes that she disobeyed police orders, and further argues that she was not involved in the fight that preceded Defendants' arrival.  *See* Plaintiff's Responsive Statement of Undisputed Material Facts ("RSMF") ¶6; Plaintiff's Statement of Disputed Material Facts ("PSMF") ¶¶6-11.

(1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   42 U.S.C. § 1983 Claims of Unlawful Seizure and False Arrest[3]

42 U.S.C. § 1983 ("§ 1983") imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To prevail on a claim under §1983 a plaintiff must show that, "some person has deprived him of a federal right . . . [and] that person who has deprived him of that right acted under the color of state or territorial law." *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014). "Generally, a public employee acts

---

[3] To the extent that Plaintiff asserts NJCRA claims, the NJCRA was modeled after 42 U.S.C. § 1983 (creating a private cause of action for violations of civil rights under the New Jersey Constitution). *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). Courts in this District have "repeatedly construed the NJCRA in terms nearly identical to its federal counterpart," and therefore Plaintiff's NJCRA claims are sufficiently addressed through the lens of this Court's analysis of Plaintiff's § 1983 claims. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) ("The Third Circuit has held that claims under the New Jersey Constitution and the NJCRA 'trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983].'").

under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Willson v. Yerke*, 604 Fed. App'x 149, 150 n.4 (3d Cir. 2015).

### i. False Arrest[4]

To prove a claim for false arrest, a plaintiff must prove that there was an arrest, and that the arrest was made without probable cause. *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 645 (D.N.J. 2011). Here, the Parties do not contest that an arrest was made, thus the Court will focus on the element of probable cause. Probable cause exists when, at the time a suspect is arrested, there are "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information [] sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Alexander v. Borough of Pine Hill*, No. 17-6418, 2020 WL 6779148 at *8 (D.N.J. Nov. 18, 2020) (quoting *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)). To determine if probable cause existed, the Court is to review the facts available to the officers at the moment of arrest based on the perception of an objectively reasonable police officer, incorporating the totality of the circumstances of the events leading up to arrest. *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527 at *3 (D.N.J. May 2, 2014) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964)); *Gould v. O'Neal*, No. 17-100, 2022 WL 354663 at *6 (D.N.J. Feb. 7, 2022). The role of the Court is to review the record to ensure that the proper procedure for determining probable cause was followed and if not, whether probable cause existed despite the failure to follow proper procedure. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469-70 (3d Cir. 2016). Usually, the question of probable cause in relation to a § 1983 claim is one for the jury, "[h]owever, a district court may conclude that probable cause did exist as a matter of law if

---

[4] The Court notes that Plaintiff asserts a First Amendment claim for the first time in her opposition brief. Because Plaintiff's opposition cannot serve as an independent basis for amending her pleading, and conversely, such opposition cannot amend the complaint, the Court will not acknowledge the argument. *See Harmon v. Sussex County*, 810 F. App'x 139, 142 (3d Cir. 2020).

the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Lucia*, 2014 WL 1767527 at *3 (quoting *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 789 (3d Cir. 2000)). "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright*, 409 F.3d at 603. The core objective of the Court is to evaluate the reasonableness of belief in the existence of probable cause. *Lucas v. Galloway Twp. Police Dep't*, No. 5-3346, 2007 WL 1797659 at *5 (D.N.J. Jun. 20, 2007).

Here, although it seems Plaintiff attempts to cast her arrest as two separate encounters, the record reflects one arrest. Pl's Opp. to Def.'s Motion for S.J. at 5. Plaintiff attempting to argue that there were two arrests is a distinction without a difference. There is no per se rule that "pointing guns at people, or handcuffing them, constitutes an arrest," nor is there a per se rule about the length of time that automatically constitutes arrest: when these factors culminate into an arrest are all dependent on the totality of the circumstances. *United States v. Robinson*, 821 Fed. App'x 141, 144 (3d Cir. 2020). Under the instant circumstances, the body camera footage shows that Plaintiff was handcuffed immediately after she yelled to another woman when Defendant Officers were attempting to disperse a crowd after at least two incidents of fighting. The record demonstrates that Defendants had probable cause to arrest plaintiff for her behavior pursuant to N.J.S.A. § 2C:33-2(a), and that the subsequent event, the report of the outstanding warrants precipitated Defendants' decision to keep her in custody and transport her to the station. Simply stated, Plaintiff was brought to the police vehicle and from there never left police custody, nor was she released from her restraints until she was brought to the station.

To begin, Plaintiff's opposition brief asserts that a person "ran into [her] fist with the ring on it," then she "walked, ran or hopped back down the street," and that "[a]fter she got back down

6

the street, [she] was standing out of the way, and she was not fighting," when she was approached

by Defendant Officers.  Pl's Opp. to Def.'s Motion for S.J. at 7.  Defendant Officers assert that

Plaintiff was refusing to comply with police officers who were trying to disperse a crowd, that

Plaintiff was "screaming and yelling," "acting irate," and refusing to provide information to

Defendant Officer Samson when requesting her social security number for the issuance of the

summons. Def.'s Motion for S.J. at 11-12. Defendant Officer Sanchez attests that she reported to

the location due to a report of fighting, and then while trying to deescalate the crowd, another,

separate incident began where a "large crowd" began to scream, push, and take fighting stances,

and it is within this disturbance that Plaintiff and two others were placed under arrest for refusing

to disperse and continuing to argue with officers.  *Id.* at Ex. K, ¶¶ 4-7.  It is further noted that

during her deposition, Plaintiff described getting into an altercation just before Defendant Officer

Sanchez approached her.  *See* Def.'s Reply, Ex. at 50:1-54:21.

Moreover, the Court has the benefit of body camera footage to assist its inquiry into

whether probable cause existed for Plaintiff's initial encounter with Defendant Officers related to

the street fight.  The video establishes the following.  There were many people still out on the street

after Defendant officers arrived and Plaintiff, among two others, were still agitated and not

following requests from police to disperse.  *See* SMF ¶¶ 5-6.  When Defendant Officer Samson

arrives, Plaintiff can be seen and heard shouting "C'mon toughie" in the direction of another

woman who was with officers further down the street, describing an altercation.  Def.'s Motion

for S.J. at Ex. C at 20:50-53.  Defendant Officer Samson approaches Plaintiff and reports to her

that the Sergeant has ordered him to give her a "ticket" for improper behavior, handcuffs her, and

walks her over to a police vehicle.  Def.'s Motion for S.J. at Ex. C at 20:53.  Defendant Officers

issued a summons to all three individuals who refused to obey officers' instructions pursuant to

N.J.S.A. § 2C:33-2(a) that provides:

> Improper behavior.  A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he
>
> (1) Engages in fighting or threatening, or in violent or tumultuous behavior; or
> (2) Creates a hazardous or physically dangerous condition by any act which serves no legitimate purpose of the actor.

N.J.S.A. § 2C:33-2(a); SMF ¶¶ 6-7.  From the record, the Court finds there is sufficient

evidence to suggest Plaintiff was engaging in activities that fall into the scope of "improper

behavior" as defined by N.J.S.A. § 2C:33-2(a) by fighting or threatening to fight.  Thus, based on

the conduct discussed above, the Court finds that Defendant Officers had probable cause to arrest

Plaintiff pursuant to her violation of N.J.S.A. § 2C:33-2(a).

Next, the Court looks at the interaction after Plaintiff was brought to the back of the police

car where, after the issuance of the summons, Defendant Officer Samson performs a warrant

check.  Def.'s Motion for S.J. at Ex. C at 21:03; SMF ¶ 8.  Defendant Officer Samson takes

Plaintiff's details, requesting the spelling of her name, her date of birth "11/1/67," and most recent

address.  *Id.* at 20:55-57.  Officers ask for her social and she calmly declines to give it.  *Id.* at

20:57; SMF ¶ 10.  Plaintiff further provides her eye color as brown, her height, and driver's license

number.  *Id.* 20:57-58.  This information is relayed to Central Communications.  Def.'s Motion for

S.J. at 12; Ex. J. ¶ 9.  Central Communications responded with two active warrants for "Ursula

Carr."  Def.'s Motion for S.J. at Ex. C 21:07; SMF ¶ 11.  The only contravening fact presented to

Defendant Officers at the time of arrest was Plaintiff denying having warrants, which she

repeatedly and unambiguously stated.  Def.'s Motion for S.J. at Ex. C 21:08-09, (it "must be a

mistake" and "that's not me"); SMF ¶¶ 12, 14.  Defendant Officers communicated to Plaintiff that

they could not assess the warrants at the scene, and Defendant Officer Samson said he would have more information "upstairs," and that they would look at the paperwork at the station.  Def.'s Motion for S.J. at Ex. C 21:10; 21:14; SMF ¶ 13.

It is important to note that the parties do not argue whether the warrants were valid, rather, that Plaintiff was misidentified as the individual who was the subject of the outstanding warrants. *See* Pl.'s Opp. at 5.  The Supreme Court has noted that "[w]hile the Constitution requires that probable cause exist before an arrest and that a speedy trial be provided after an arrest . . . it does not require officers who execute an arrest pursuant to a valid warrant or who subsequently maintain custody of the detainee to investigate independently every claim of innocence or to perform an error-free investigation of such a claim." *Rivera v. Dir. Ronald P. Edwards*, No. 23-1286, 2023 WL 8058753 at *2 (3d Cir. Nov. 21, 2023) (quoting *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). In *Baker*, the plaintiff was detained for three days before the sheriff investigated whether plaintiff was, in fact, the suspect listed on the warrant, and the Supreme Court held that "a detention of three days over a New Year's weekend does not and could not amount to [a constitutional] deprivation." *Id.*  Here, Plaintiff's protestations of mistaken identity were addressed as soon as she appeared with Defendant Officer Samson before the officer processing arrestees into custody at the station and was immediately released once it was confirmed that she was not the "Ursula Carr" listed on the warrants based on her birthdate. Def.'s Motion for S.J. at Ex. C 21:25-26; SMF ¶¶ 19-21.[5]

---

[5] It is noted in the arrest report signed by Defendant Officers that Central Communications ran Plaintiff's name with a different date of birth than the one provided by Defendant Officer Samson. *See* Def.'s Motion for S.J., Ex. F.  The warrants under the name "Ursula Carr" were for a woman with the birthdate of November 17, 1987, and Plaintiff's birthdate is November 1, 1967.  SMF ¶ 20.  It is further noted that the warrants were issued to an unlicensed female driver with brown eyes who purported herself to be Ursula Carr and provided the birthdate of November 17, 1987, which is also Plaintiff's daughter's birthday.  Def.'s Motion for S.J. at 16; at Ex. J ¶ 15.

Ultimately, the information that Plaintiff provided to Defendant Officers on the scene triggered a match from Central Communications, and there were no obvious signs of mistake at that moment to question the appropriateness of the arrest, and thus the Court finds that the arrest was objectively reasonable given the circumstances. *See Ramirez v. United States*, 81 F. Supp. 2d 532, 540 (D.N.J. 2000) (holding that while the information on the warrant differed from the information given by Plaintiff when initially detained, that difference is insufficient to defeat the positive identification made on the basis of the computer records that alerted to an outstanding warrant, supplemented with the efforts made by the inspector to confirm the plaintiff's identity). Here, there were no known inconsistencies regarding the information underlying the warrants known to the officer at the time of arrest. Defendant Officer Samson provided all of Plaintiff's information correctly to Central Communications, but unbeknownst to Defendant Officer Samson, Central Communications ran Plaintiff's name with the wrong birthdate. *See* Def.'s Motion for S.J., Ex. F; SMF ¶ 20. Defendant Officer Samson could not look at the warrants to confirm the details in the field, and made it known to Plaintiff that he would have to take her to the station in order to review the warrants. Def.'s Motion for S.J. at Ex. C 21:10; 21:14; SMF ¶ 13. Once at the station, Defendant Samson immediately addressed Plaintiff's assertion of mistaken identity, whereby the officers discovered that the wrong birthdate was used, and she was released. Def.'s Motion for S.J. at Ex. C 21:25-26; SMF ¶¶ 19-21.

Based on the information available to Defendant Officers at the time, in the context of responding to an active scene on the street, the Court finds that Defendant Officers had probable cause to arrest Plaintiff pursuant to the warrants reported to them by Central Communications and properly brought her to the station to investigate further under more stable conditions.[6]

---

[6] The Fourth Amendment prohibits unreasonable seizures, which are defined as when a reasonable person believes he or she is not free to terminate a police encounter. *See* U.S. Const. amend. IV; *Trafton*, 799 F. Supp. 2d at 433. Because

### ii. Qualified Immunity

While the Court believes that Defendants had probable cause in this case, it is important to note that under § 1983, even if probable cause did not exist, the Court finds that Defendants are entitled to qualified immunity. *Lucia*, 2014 WL 1767527 at *4 (D.N.J. May 2, 2014) (quoting *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 385 (N.J. 2000)). Because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Government officials performing discretionary functions are generally shielded from liability for civil damages when their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known at the time. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, Defendant Officers assert that they are entitled to qualified immunity and the Court agrees. The circumstances presented on the night of July 24, 2021, demonstrate that the Defendant Officers had an objectively reasonable belief that Plaintiff had been involved in the fighting on the street, and specifically witnessed Plaintiff provoking a woman while they were attempting to deescalate the crowd that remained, in violation of N.J.S.A. § 2C:33-2(a) (1), engaging in threatening behavior.

In relation to the subsequent discovery of the outstanding warrants, the Court notes that the Third Circuit has held that qualified immunity is generally extended to officers who made an arrest based on an objectively reasonable belief that there was a valid warrant justifying arrest. *Berg v.*

---

the Court has found that Defendant Officers had probable cause to arrest the Plaintiff, which is a more demanding standard than reasonable suspicion, we need not determine whether Defendant Officers had reasonable suspicion. *See Yoast v. Pottstown Borough*, No. 22-1960, 2023 WL 4418213 at *2 (3d Cir. Jul. 10, 2023); *U.S. v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).

*County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) (collecting cases). A warrant that appears valid does not make an officer immune from suit, however, if the circumstances demonstrate that it was unreasonable to rely on the document, including if other information was present that the officer possessed or had reasonable access, and whether failing to make an immediate arrest would have created a public threat or danger of flight. *Id.* The record reflects that Defendant Officers reasonably believed there were valid, outstanding warrants against Plaintiff given the information they had access to at the time and the communication they received from Central Communications. *See Rogers v. Powell*, 120 F.3d 446, 456 (3d Cir. 1997) (concluding that a state trooper who was inaccurately told by another trooper that there was a warrant for the plaintiff's arrest was immune from suit); *Ramirez v. New Jersey*, 81 F. Supp. 2d 532, 538 (D.N.J. 2000) (holding reliance on computer record of a warrant provides reasonable basis for detention); *State v. Green*, 318 N.J. Super. 346, 352 (N.J. Super. Ct. App. Div. 1999) (holding lawful arrest by officer of wrong person pursuant to valid warrant describing similar person).

The Court also notes that the decision to arrest Plaintiff was made with Defendant Officers in the field, in the middle of deescalating a street fight, without access to additional information or ability to conduct research or review the warrants with more specificity. *See* SMF ¶ 13. "Under qualified immunity, police officers are entitled to a certain amount of deference for decisions they make in the field [because they] must make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). Given the totality of the circumstances, the Court finds that Defendant Officers reasonably believed they had probable cause to arrest plaintiff due to the existence of active warrants in her name.

Once Defendant Officer Samson and Plaintiff arrived at the station, Defendant Samson checked the warrants and performed the necessary due diligence to confirm the identity of the

Plaintiff, and when they realized their mistake, immediately released her.  SMF ¶¶ 20-22; Def.'s Motion for S.J. at Ex. J ¶ 13-16.  Therefore, the Court finds that Defendant Officers are entitled to qualified immunity and must grant summary judgment in their favor.

### iii.  Failure to Intervene and Supervisory Liability

Here, Plaintiff alleges that Defendant Officer Samson failed to intervene when he acquiesced to Defendant Officer Sanchez's order to take Plaintiff to the station, and similarly that Defendant Officer Sanchez should be held liable for participating and directing the alleged violation of Plaintiff's rights.

Generally, for a plaintiff to demonstrate an officer's liability for failing to intervene, an underlying constitutional right must have been violated, the officer must have had a duty to intervene, and the officer must have had a realistic and reasonable opportunity to intervene.  *White v. City of Vineland*, 500 F. Supp. 3d. 295, 305-06 (D.N.J. 2020).  For supervisory liability, a plaintiff must establish a "causal connection between the supervisor's direction and that violation, or, in other words, proximate causation."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

Given the Court has determined that no constitutional violation has occurred, summary judgement must be granted in favor of Defendant Officers because both theories are predicated on an underlying constitutional violation.

### iv.  Municipal Liability

Plaintiff attempts to assert vicarious liability against Camden County due to Defendant Officers' allegedly negligent performance of duty.  However, liability pursuant to *respondeat superior* or vicarious liability cannot apply to a municipality in the context of a §1983 claim.  *See Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 725 (D.N.J. 2013).  Further, the New Jersey

Civil Rights Act ("NJCRA") does not impose vicarious or *respondeat superior* liability, in accordance with its analogous treatment of claims pursuant to § 1983. *See Meleika v. Bayonne Police Dep't*, No. 17-1958, 2020 U.S. Dist. LEXIS 80897 at *19, 19 n.11 (D.N.J. May 7, 2020).

The only way for Plaintiff to assert a claim for municipal liability is to allege a *Monell* claim under § 1983 which requires a plaintiff to demonstrate that the municipality itself caused the underlying constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). It is not enough to identify conduct properly attributable to the municipality, a plaintiff must also demonstrate that the municipality was the "moving force" behind the injury alleged. *Awadalla v. City of Newark*, No. 16-02530, 2023 WL 6633851 at *2 (D.N.J. Oct. 12, 2023).

Under the *Monell* Doctrine, "a local government unit is liable only to the extent that its own policies or practices led to a deprivation of constitutional rights." *Abdallah v. City of Paterson*, No. 16-4660, 2017 U.S. Dist. LEXIS 82135 at *9 (D.N.J. May 26, 2017). Thus, Plaintiff would need to demonstrate that (1) a constitutional injury occurred and (2) the injury was caused by either a municipal policy or custom. *Id.* As discussed, Plaintiff does not present any evidence demonstrating that she suffered a Constitutional violation, nor does she point to any policy or custom of the municipality that created the "moving force" behind Defendant officers' actions. Therefore, Plaintiff's claims asserted against Camden County fail as a matter of law. *See Mulholland v. Gov't Cnty. Of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

Here, the Court has found that there was no constitutional injury. Further, Plaintiff does not point to any policies or customs of Camden County that could be the cause of the injury she asserts. Thus, the Court must grant summary judgment in favor of Camden County.

### B. New Jersey Tort Claim Act Claims

Finally, Plaintiff asserts tort claims of negligence and false arrest[7] under New Jersey state law. Each claim will be addressed in turn.

#### i. Immunity Pursuant to N.J.S.A. § 59:3-3

The New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1 to 12-3, provides for the liability of tort claims against public employees and states in pertinent part: "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. The standard to determine if a public employee was acting in "good faith" is the same standard used to assess "objective reasonableness" in relation to the application of qualified immunity pursuant to § 1983. *See Castro v. New Jersey*, 521 F. Supp. 3d 509, 525 (D.N.J. 2021). Additionally, the "immunity" provided by N.J.S.A. 59:3-3 is not applicable in situations where a public employee is found to have engaged in "willful misconduct." N.J.S.A. § 59:3-14(a). Willful conduct is "the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden . . . . [I]t requires much more than an absence of good faith and much more than negligence." *Castro*, 521 F. Supp. 3d. at 525 (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 830 (D.N.J. 1993)).

Here, the Court has found that Defendant Officers are entitled to qualified immunity, and that their arrest of Plaintiff was objectively reasonable given that they had probable cause to arrest her pursuant to N.J.S.A. § 2C:33-2(a) due to her behavior on the streets on the night of July 24, 2021, and transporting her to the station based on the report of outstanding warrants associated with Plaintiff's name. Therefore, it follows that Defendant Officers are entitled to immunity

---

[7] To the extent that Plaintiff asserts a false imprisonment claim, in New Jersey false arrest and false imprisonment are considered one and the same. *See Ramirez v. United States*, 998 F. Supp. 425, 434 (D.N.J. 1998) ("New Jersey courts treat false arrest and false imprisonment as the same tort."). Thus, Plaintiff's false imprisonment claim is sufficiently addressed through the lens of this Court's analysis of Plaintiff's false arrest claim.

pursuant to N.J.S.A. § 59:3-3. Further, Plaintiff does not argue, nor does the record support, a finding that Defendant Officers engaged in the type of "willful conduct" prohibited by N.J.S.A. § 59:3-3. "[M]uch more than negligence" is required to overcome the immunity provided by N.J.S.A. § 59:3-3. Therefore, the Court must grant summary judgment on these grounds as well.

### ii. False Arrest

Immunity pursuant to N.J.S.A. § 59:3-3 does not extend to claims of false arrest or false imprisonment: "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. § 59:3-3. False arrest is defined as "the constraint of the person without legal justification," or in other words, where an arrest or detention occurs against a person's will and such arrest or detention was done without proper legal authority or justification. *See Ramirez*, 998 F. Supp. at 434 (internal citations omitted). Under New Jersey law, a plaintiff need not prove the lack of probable cause, however, "its existence, as a defense, will defeat a claim for false arrest." *Santiago v. City of Vineland*, 107 F. Supp. 2d. 512, 561 (D.N.J. 2000).

Here, the Court has already discussed at length that Defendant Officers had probable cause to arrest Plaintiff regarding her behavior in the street pursuant to N.J.S.A. § 2C:33-2(a) and due to the presence of outstanding warrants in her name. Thus, the Court must grant summary judgment on the false arrest claim under New Jersey state law.

### V.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**. An order consistent with this Opinion will be entered.

March 26, 2024

KAREN M. WILLIAMS, U.S.D.J.